

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., | § | |
| JOHN DAVID FOSTER | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:05-CV-84-TH |
| | § | JURY |
| BRISTOL-MYERS SQUIBB COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant's Motion to Dismiss Relator's Complaint and Memorandum of Points and Authorities in Support* [Clerk's Docket No. 22], filed December 13, 2007. Having considered the motion, the responsive briefs, the record and the applicable law, the Court enters the following order.

## I. FACTUAL & PROCEDURAL BACKGROUND

Relator John David Foster ("Relator" or "Foster") brings this *qui tam* action against Defendant Bristol-Myers Squibb Company ("Defendant" or "BMS"), alleging violations of the Federal False Claims Act[1] (the "FCA") and similar state statutes.[2] In plain terms, Foster accuses

---

[1] 31 U.S.C. § 3729 *et seq.* (2008)

[2] The state statutes cited by Foster are the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. §§ 36.001 *et seq.*; the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175 *et seq.*; the California False Claims Act, Cal. Gov't Code §§ 12650 *et seq.*; the Florida False Claims Act, Fla. Stat. §§ 68.081 *et seq.*; and the Massachusetts False

BMS of (1) giving illegal bribes and kickbacks to an HMO in order to induce doctors to prescribe BMS drugs; and (2) reporting inflated prices for those drugs to in order to avoid paying Medicaid rebates to the government.

A.  The Factual Basis of Foster's Claims

Foster previously worked for one of BMS's competitors:  the pharmaceutical company Parke-Davis.  Foster was Parke-Davis's National Account Manager for accounts in Texas and Louisiana from June 1998 through September 2000.  In this position, he was responsible for selling pharmaceutical products to health maintenance organizations ("HMOs") and other managed care entities.  One such HMO was the Oschner Health Plan ("OHP"), which operated in Louisiana and the Eastern District of Texas.  OHP was a large regional HMO, with approximately 200,000 individual members and some 700 affiliated doctors.  One of Foster's tasks at Parke-Davis was convincing OHP to give unrestricted formulary access to Parke-Davis's cholesterol-lowering drug, Lipitor.

For the uninitiated, a formulary is a list of medications for which an HMO provides coverage.  *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, 485 F.3d 880, 884 (6th Cir. 2007).  Formularies come in a variety of shapes and sizes.  *Id.*  An HMO with an "open formulary" structure will pay for drugs not listed on the formulary; one with a "closed formulary" will not.  *Id.*  Additionally, some HMOs use incentive-driven formularies, which may influence drug selection by assigning different co-payment amounts to different drugs.  *Id.*  So, a formulary's composition can have a  significant effect on pharmaceutical sales--and drug company profits.  "Because a drug's inclusion on an [HMO's] formulary can dictate prescription choices for patients covered by [HMOs], drug manufacturers seek to secure inclusion on [HMO] formularies as well as favorable

---

Claims Law, Mass. Gen. Laws ch. 12, §§ *5 et seq.*  These state FCAs are textually similar and substantively the same as the federal FCA.  *See Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1003 n2 (9th Cir. 2002) (noting that there is no material difference between the federal FCA and the California FCA); *see United States ex rel. Humphrey v. Franklin-Williamson Human Services, Inc.*,189 F.Supp.2d 862, 867 (S.D. Ill. 2002) (noting that the Illinois Whistleblower Act tracks the relevant provisions of the federal FCA almost word for word).

placement within those formularies through financial rewards, including rebates, to [HMOs]. *Id.*

Foster claims that both Parke-Davis and BMS used such financial rewards to fight for position on OHP's "very restrictive" formulary. (Relator's Compl. at 9). Specifically, he explains that Parke-Davis's Lipitor competed against BMS's cholesterol-lowering drug, Pravachol–and Pravachol prevailed. Pravachol was included in the OHP formulary; Lipitor was not. As such, Foster's goal was for Lipitor to take Pravachol's place. According to Foster, both Parke-Davis and BMS provided financial benefits to OHP representatives to influence their formulary decisions, resulting in a "bidding war" between the two companies. *Id.* at 10. OHP encouraged and escalated this bidding war by notifying each company of the various rebates, grants, donations and incentives the other was offering.

Foster claims that in negotiations that occurred between February 1998 and January 1999, various OHP representatives told him about incentives provided by BMS, including retroactive rebates; cash grants to OHP's pharmacy department; and research grants, consulting and speaking fees, and other compensation given to the head of OHP's Pharmacy and Therapeutics Committee, Dr. Richard Milani. (Relator's Compl. at 11-15). Apparently, these incentives were better than those offered by Parke-Davis–and Pravachol maintained its place on the OHP formulary. Foster was told that Parke-Davis would have to beat BMS's incentives before Lipitor would be added the formulary. However, Parke-Davis was unable to do so; BMS's incentives were too great.

According to Foster, he learned the secret to BMS's success in December 1998 from Vanessa Pappion, a BMS regional account representative. Pappion told Foster that BMS was able to offer such large discounts and bonuses to OHP (while still turning a profit) because BMS did not include the incentives in the "best price" amount it reported to Medicaid for Pravachol and another drug called Glucophage.[3] By falsely inflating its "best price," BMS reduced its obligation to pay Medicaid rebates. According to Foster, this scheme mitigated the cost of the OHP incentives.

---

[3]Glucophage is an oral antihyperglycemic drug used to manage Type II diabetes. Though Foster's complaint (and this opinion) primarily discuss Pravachol, Foster's allegations of kickbacks and false claim submissions relate to both Pravachol and Glucophage.

Foster claims that OHP's pharmacy director, Tim Hambacher also described this practice to him in March 1999, stating that "the cash incentives provided by BMS effectively lowered the dose price of its products but was given in such a way as to not affect reports of 'best price.'" (Relator's Compl. at 15).

Plainly, appreciating these allegations requires some understanding of the Medicaid reimbursement program.

B. Medicaid Reimbursement

The Medicaid reimbursement program ensures that Medicaid has access to the same price discounts and deals received by commercial customers. *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 538 F.Supp.2d 367 (D. Mass. 2008). The program requires a drug manufacturer, on a quarterly basis, to pay rebates to state Medicaid offices that have subsidized the purchase of that manufacturer's drugs during that quarter. *Id.; see* 42 U.S.C. § 1396r-8. The rebate due is calculated by multiplying the difference between the "Average Manufacturer Price" ("AMP") and the "Best Price" for the covered drug by the total number of units paid for by the state during that rebate period. *Id.* The AMP is defined as "the average price paid to the manufacturer for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade." 42 U.S.C. § 1396r-8(k)(1)(A). The "Best Price" is defined as "the lowest price available from the manufacturer during the rebate period" and must include "cash discounts, free goods that are contingent on any purchase requirement, volume discounts, and [non-exempted] rebates." 42 U.S.C. § 1396r-8(c)(1)(C)(I)-(ii). The Best Price ensures that the government is provided the lowest price on drugs.

Under the Medicaid rebate program, each drug manufacturer is required to report both the AMP and the Best Price for each of its covered drugs to the Centers for Medicare and Medicaid Services ("CMS"). Joel M. Androphy & Mark A. Correro, *Whistleblower and Federal Qui Tam Litigation - Suing the Corporation for Fraud*, 45 S. Tex. L. Rev. 23, 39 (2003). CMS then calculates the unit rebate amount and reports it to the state Medicaid agencies. *Id.* The states then use the unit

rebate amount, and data from pharmacies about prescription drug utilization during the quarter, to calculate the rebate owed to them by the drug manufacturer. *Id.* As such, the system depends on accurate reporting by drug manufacturers. But, that is exactly what Foster claims BMS failed to do.

C.  Foster's Allegations

(1)  Best Price Claims

Foster's primary allegation is that BMS did not accurately report its Best Price. He claims that from 1998 through 2002, BMS did not factor the financial incentives given to OHP into its Best Price reports–and, therefore, paid the state Medicaid programs less in rebates than what BMS actually owed.

(2)  Kickback Claims

Additionally, Foster argues that the rebates, discounts, grants and other incentives paid by BMS were intended to make doctors prescribe BMS pharmaceuticals over other drugs. Foster argues that by paying financial incentives to OHP officials–and thereby obtaining a place on the OHP formulary–BMS "all but guarantee[d] that OHP doctors would prescribe Defendant's drugs over competing products to OHP participants and nonparticipants alike." Foster concludes that by doing so, BMS violated the Federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b). The AKS "criminalizes the payment of kickbacks, bribes, or other inducements to doctors in an effort to influence decisions about prescriptions that are reimbursed by a federal health care program." *Rost v. Pfizer*, 507 F.3d 720, 724 (1st Cir. 2007); *see United States v. Miles*, 360 F.3d 472, 480 n3 (5th Cir.2004) (citing 42 U.S.C. § 1320a-7b(b)(2)(B) as prohibiting payments that are intended to induce a party to "recommend purchasing leasing or ordering any good...for which payment may be made in whole or in part under a Federal health care program."); *see also United States ex rel. Thompson*, 125 F.3d 899, 901 (5th Cir. 1997). Foster further asserts that these inducements caused health care providers to prescribe BMS's drugs Pravachol and Glucophage and then submit reimbursement claims to government-funded health programs. Foster argues that such

reimbursement claims constitute false claims for payment (actionable under the FCA) because if the government had known about BMS's unlawful kickbacks, it would not have paid the health care providers' reimbursement claims.

### (3)    Section 340B Claims

Finally, Foster alleges that BMS submitted false claims by overcharging entities qualified by the government to purchase drugs at statutorily-defined discounted prices, pursuant to Section 256b of the Public Health Service Act, 42 U.S.C. §§ 201-300gg-92.  As explained below, this claim depends on the charge that BMS reported false Best Prices to Medicaid.

The  Public Health Service Act includes a drug discount program known as the "Section 340B Program" that requires drug manufacturers to provide discounted prices to certain healthcare entities that receive federal funds. It defines the covered entities, which include federally-qualified health centers, disproportionate share hospitals and urban Indian organizations.  The statute also establishes the formula for calculating the discounts given to these entities.  The formula provides that a covered entity will not pay more than the average manufacturer price for the drug (as reported to the government in the preceding quarter), minus the Medicaid rebate percentage.  So, 340B drug prices depend on the Medicaid rebate percentage.  And, the Medicaid rebate percentage depends on a drug manufacturer's reported Best Price.  *See* Section I(B) *supra*.  For this reason, Foster theorizes that by reporting false Best Prices, BMS reduced the Medicaid rebate percentage used to calculate drug prices under the Section 340B program.  The result of a reduced Medicaid rebate percentage would be higher prices for Section 340B entities.  On this basis, Foster claims that BMS overcharged entities covered by the Section 340B program.

### (4)    Summary of the Claims

To summarize:  Foster claims that BMS violated the False Claims Act in three ways:  (1) by giving illegal kickbacks; (2) by submitting inflated Best Price reports; and (3) by overcharging federally-qualified entities covered by the Section 340B Program.

D.  Procedural History

Based on these claims, Foster filed suit in this Court on March 31, 2005 under *qui tam* provisions of the federal False Claims Act (the "FCA") and the Texas, California, Illinois, Massachusetts, and Florida FCAs.  Twenty months later, the United States gave notice that it did not intend to intervene in the case.  The Court then ordered the complaint unsealed and authorized service on BMS.  BMS subsequently filed the present motion to dismiss under Rule 12(b)(6).  BMS argues that Foster's claims should be dismissed for four reasons: (1) all claims (except those under the California FCA) are barred by the applicable statute of limitations; (2) the allegations are not stated with enough particularity to satisfy Federal Civil Procedure Rule 9(b); (3) the complaint does not allege the submission of a "false claim," and therefore fails to state an actionable claim under the FCA; and (4) Foster has not complied with statutory service and filing requirements.  Additionally, BMS argues that the Court should dismiss Foster's claim under the Texas Medicaid Fraud Prevention Act ("Texas MFPA") because the State of Texas has not intervened in the case.

## II. LEGAL STANDARDS

A.  Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, --- U.S.---, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[4]  The plaintiff's "[f]actual allegations must be enough to raise a right to relief

---

[4]The Fifth Circuit has long followed the standard of review set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) which stated that a Rule 12(b)(6) motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.  However, in the *Twombly* opinion, the Supreme Court retired this "no set of facts" language. *Cuviller v. Taylor*, 503 F.3d 397, 401, n.4 (5th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1969 (stating that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact." *Id.* (quoting *Twombly,* 127 S.Ct. at 1965) (internal quotation marks, citations and footnote omitted).

When considering a 12(b)(6) motion to dismiss, the court must accept "all well-pleaded facts as true" and must view them "in the light most favorable to the plaintiff. *In re Katrina Canal Breaches*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Rule 12(b)(6) does not permit dismissal of an action based upon a judge's disbelief in the veracity of the pleaded facts. *Neitzke v. Williams*, 490 U.S. 319, 327, 1009 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Further, the court also accepts as true any reasonable inferences that may be drawn from the material allegations in the complaint. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). But, conclusory allegations and unwarranted factual inferences or legal conclusions are not accepted as true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

Mindful of these considerations, the Court now examines the substance of Defendant's Motion to Dismiss.

## III. ANALYSIS

A.  The False Claims Act

The False Claims Act, 31 U.S.C. § 3729 *et seq.*, prohibits the submission of false or fraudulent claims to the federal government. *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 224 (1st Cir. 2004). It was enacted in 1863 with the primary goal of "stopping the massive frauds perpetrated by large [defense] contractors [against the Union Army] during the Civil War." *Vt. Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 781, 146 L.Ed.2d 836, 120 S.Ct. 1858 (2000). The FCA's "qui tam" provisions permit a

private individual to sue on behalf of the government to recover for false claims for payment submitted to the government. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).[5] "A private relator is entitled to a portion of any proceeds from the suit, whether the United States intervenes as an active participant in the action or not." *Rost*, 507 F.3d at 727.

Specifically, the FCA permits private individuals to sue, and recover damages on behalf of the United States, from any person who:

> (1)    knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval; or

> (2)    knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1)-(2). Additionally, the FCA imposes liability for 'reverse claims;' so-called because rather than making a claim for payment, the defendant makes a misrepresentation to the Government *to avoid or reduce a payment obligation. See United States ex rel. Doe v. Dow*, 343 F.3d 325, 329 (5th Cir. 2003) (emphasis added). This 'reverse claim' provision of the FCA allows a plaintiff to recover from any person who "knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7).

In the present case, Foster claims that BMS is liable for both direct and reverse false claims.

---

[5]"Qui tam" is an abbreviation of the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which translates to 'who pursues this action on our Lord the King's behalf as well as his own.' *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 727 n.4 (1st Cir. 2007) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 127 S.Ct. 1397, 1403 n.2, 167 L.Ed.2d 190 (2007)) "Qui tam provisions first became popular in thirteenth century England. They permitted private individuals to bring suit on behalf of the King and served as a supplement to official law enforcement." *Karvelas*, 360 F.3d 220, 224 n.5

His Kickback and Section 340B theories of liability allege direct false claims under Section 3729(a)(1)-(2); while his Best Price theory alleges reverse claims under Section 3729(a)(7).[6]

It is important to remember that the focus in an FCA suit must be on the *false claim* itself. As the First Circuit has explained, "the FCA does not create a cause of action for *all* fraudulent conduct affecting the government." *Rost,* 507 F.3d at 727 (citing *Karvelas,* 360 F.3d 225) (emphasis added). Rather, the fundamental element of an alleged FCA violation is a false or fraudulent claim that is submitted to the government. *Karvelas*, 360 F.3d at 227-28. "Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *Id.* at 225 (quoting *Clausen*, 290 F.3d 1301, 1311 (11th Cir. 2002). Latin aside, there is no doubt that the FCA "attaches liability not to the underlying fraudulent activity or to the government's wrongful payment, but the 'claim for payment.'"*Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 785 (4th Cir. 1999).

## B.  Statute of Limitations

BMS first argues that Foster's claims under the FCA, and his claims under the state FCA statutes (other than California), are time-barred and should be dismissed. BMS is entitled to make this argument in its 12(b)(6) motion to dismiss because a complaint that shows relief to be barred by the statute of limitations may properly be dismissed for failure to state a cause of action. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *see Doe v. Linam*, 225 F.Supp.2d 731, 734 (S.D. Tex. 2002) ("A Rule 12(b)(6) motion to dismiss for failure to state a claim is the proper vehicle by which to assert a limitations defense where a plaintiff's complaint shows affirmatively that his claims are time-barred.") (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)). For the reasons given below, the Court agrees that any violations of the Federal, Texas, Illinois, Florida and Massachusetts FCAs based on false claims submitted prior to March 31, 1999 are barred by the statute of limitations.

---

[6]Defendants dispute that Foster's complaint states a false claim of any kind under Section 3729(a). The Court does not reach that question; and by this comment only intends to clarify the general nature of Foster's claims.

(1)    <u>FCA Claims</u>

Foster filed this lawsuit on March 31, 2005, alleging false claims made from January 1998 through the first quarter of 2002.  BMS argues that these claims are barred under the applicable six-year statute of limitations.  In response, Foster counters that his claims are timely because the applicable limitations period is actually ten years.  The parties' disagreement arises directly from the text of the FCA's limitations provision, which states that an FCA lawsuit may not be brought:

(1)    more than 6 years after the date on which the violation of [the FCA] is committed, or

(2)    more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b).

Foster's assertion that he is entitled to a ten-year limitations period is based on the view that the equitable tolling provision codified in § 3731(b)(2) applies to relators and the government.  BMS interprets the tolling provision to apply only to the government.  Unfortunately for this Court, Fifth Circuit case law has not definitively established which interpretation is correct.

The only Fifth Circuit case to address the issue is *United States ex rel. Erskine v. Baker*, No. 99-50034, 2000 WL 554644 (5th Cir. Apr. 13, 2000).  Generally speaking, the Court of Appeals in *Erskine* sided with BMS's interpretation.  *Id.*  Based on the text and legislative history of the statute, the *Erskine* Court wrote that the purpose of § 3731(b)(2) is to protect the government from "fraud that is not immediately discoverable." *Id.* (noting that § 3731(b)(2) tolls the statute until "the official of the United States charged with responsibility to act in the circumstances" has notice).  Ultimately, the *Erskine* Court held that action brought by a relator such as Foster is exclusively controlled by

the six-year limitations period in § 3731(b)(1). *Id.* at *2. Nevertheless, *Erskine* is an unpublished opinion; and, as such, is not precedent in these circumstances. *See* 5th Cir. R. 47.5.4.

Other courts disagree over the correct interpretation of § 3731(b)(2)'s tolling provision. *United States ex rel. Snapp, Inc. v. Ford Motor Co.,* 532 F.3d 496, 509-10 (8th Cir. 2008) (citing conflicting circuit court authorities); *United States ex rel. Lowman v. Hilton Head Health System, L.P.*, 487 F.Supp.2d 682, 694 (D.S.C. 2007) (citing conflicting authorities). The cases that have addressed the issue are divided into three schools of thought. *United States ex rel. Lewis v. Walker*, 2007 U.S. Dist LEXIS 68208 (M.D. Ga. 2007). The first group, which includes *Erskine*, interprets the phrase "official of the United States" as an explicit limitation of the tolling provision to cases in which the government intervenes as an actual participant. *See, e.g., United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 725 (10th Cir. 2006); *Foster v. Savannah Communication,* 140 Fed.Appx. 905 (11th Cir. 2005); *United States ex rel. Howard v. Lockheed Martin Corp.* 499 F.Supp.2d 972 (S.D. Ohio 2007); *United States ex rel. Thistlewaite v. Polymer,* 6 F.Supp.2d 263 (S.D.N.Y. 1998); *United States ex rel. Amin v. George Washington Univ.*, 26 F.Supp.2d 162 (D.D.C. 1998). The second line of cases takes the approach that because a *qui tam* relator effectively steps into the government's shoes, subsection (b)(2) will toll the limitations period until the relator learns of the wrongdoing. *See,e.g., United States ex rel Hyatt v. Northrup Corp.*, 91 F.3d 1211 (9th Cir. 1996); *United States ex rel. Repko v. Guthrie Clinic, P.C.,* 557 F.Supp.2d 522 (M.D. Pa. 2008); *United States ex rel. Downy v. Corning, Inc.,* 118 F.Supp.2d 1160 (D.N.M. 2000); *United States ex rel. Malloy v. Telephonics Corp.,* 68 Fed.Appx. 270 (3d Cir. 2003); *United states ex rel Bidani v. Lewis,* 1999 U.S. Dist. LEXIS 3530, 1999 WL 163053 (N.D. Ill. Mar. 12, 1999). Finally, the third interpretation holds that subsection(b)(2) applies to all FCA suits and tolls the limitations period until the *government official* actually learns of the violation. *See, e.g., United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 474 F.Supp.2d 75 (D.D.C. 2007); *United States ex rel. Salmeron v. Enterprise Recovery Systems, Inc.*, 464 F.Supp.2d 766 (N.D. Ill. 2006); *United States ex rel Colunga v. Hercules, Inc.*, 1998 U.S. Dist. LEXIS 21811, 1998 WL 310481 (D. Utah Mar. 6, 1998).

Foster argues that the third school of thought is the correct interpretation of subsection(b)(2).

He urges the Court to find that the statute of limitations was tolled until he gave the government notice of BMS's alleged schemes by filing suit on March 31, 2005. Under this approach, the limitations period would date back to March 31, 1995–and would include all of the alleged false claims.

For its part, BMS advocates for the first (and most restrictive) interpretation of subsection (b)(2)–that the tolling provision does not apply at all if the government does not intervene. Interpreted in this way, the statute of limitations would bar any false claim that occurred before March 31, 1999. Because Foster has alleged claims occurring from January 1998 through early 2002, BMS's interpretation would bar at least some of his claims.

While *Erskine* is not binding precedent, its reasoning does provide this Court with guidance. In *Erskine*, the Court found that the language and legislative history of § 3731(b)(2) did not give the benefit of its tolling provision to relators. For this reason, the Court reckoned that subsection (b)(2) could only be available to relators if they were in direct identity with the government. At the same time, the Court stated the possibility of such a surrogate relationship between relator and government was foreclosed by Fifth Circuit precedent established in *United States ex rel. Foulds v. Texas Tech University*, 171 F.3d 279 (5th Cir. 1999). In *Foulds*, the Fifth Circuit established that "a relator's independent and controlling role in initiating and prosecuting an FCA suit meant that she was not sufficiently aligned with the United States to be able to invoke the United States's 'sovereign ability to evade the prohibitions of the Eleventh Amendment.'" *Foulds*, at 294. While recognizing that *Foulds* was not a limitations case, the Fifth Circuit stated that *Foulds*'s reasoning distinguishing between a *qui tam* relator and the United States nevertheless indicated that relators cannot avail themselves of subsection (b)(2)'s tolling provision. As the court noted, *Foulds*'s distinction precluded it from adopting the Ninth Circuit's approach in *Hyatt* (a case in the second school of thought), where the court held that a *qui tam* plaintiff could be considered an official of the United States charged with responsibility to act. *Id.* at n3. If given another opportunity to interpret § 3731(b)(2) this Court is of the opinion that the Fifth Circuit would reach the same conclusion it did in *Erskine*, since *Foulds*'s distinction between a relator and the government is still recognized as precedent in this circuit. *See, e.g., United States ex rel. Patricia Laird v. Lockheed*

*Martin Engineering Science Servs. Co.*, 336 F.3d 346 (5th Cir. 2003); *see also United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 481 F.Supp.2d 815, 822 n6 (S.D. Tex. 2007); *see also Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-73, 120 S.Ct. 1858, 1862, 146 L.Ed.2d 836 (2000) (finding that the FCA "gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of recovery").

The position advanced by Foster–that he should be given the benefit of Section 3731(b)(2)'s tolling provision without being subjected to its knowledge requirement–depends almost entirely on *Pogue*, a district court case from the D.C. Circuit. *Pogue*, 474 F.Supp.2d 75 (D.D.C. 2007). *Pogue* found that § 3731(b)(2) tolls the limitations period in suits brought by a relator until the government learns of the violation. *Id.* To reach this conclusion, *Pogue* exhumed *United States ex rel Colunga v. Hercules, Inc.*, 1998 U.S. Dist. LEXIS 21811, 1998 WL 310481 (D. Utah Mar. 6, 1998), a decision that was laid to rest by the Tenth Circuit in *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 725 (10th Cir. 2006). While *Pogue* is a well-considered opinion, it reaches a conclusion that is against the greater weight of authority–including that of the Fifth Circuit.

This Court has thoroughly considered the text of the statute, the legislative history, and the case law cited above. Having done so, the Court is of the opinion that actions brought by a *qui tam* relator are governed by the limitations period in §3731(b)(1). *Accord Erskine*, No. 99-50034, 2000 WL 554644 (5th Cir. Apr. 13, 2000) *Sikkenga*, 472 F.3d 702, 725 (10th Cir. 2006); *Foster*, 140 Fed.Appx. 905 (11th Cir. 2005); *Howard*, 499 F.Supp.2d 972 (S.D. Ohio 2007); *Thistlewaite*, 6 F.Supp.2d 263 (S.D.N.Y. 1998); *Amin*, 26 F.Supp.2d 162 (D.D.C. 1998). As such, Foster is subject to a six-year statute of limitations. Any false claims alleged to have occurred before March 31, 1999 are time-barred and must be dismissed.

That having been said, Foster has still alleged that BMS made numerous other false claims within the limitations period (from March 31, 1999 through 2002). Despite this fact, BMS argues that the Court's determination that a six-year limitation period applies should result in the dismissal of *all* of Foster's claims. The basis for this argument is that the remaining false claims alleged to

14

have occurred within the statute are based on factual allegations of wrongdoing that occurred more than six years before Foster filed his complaint. (Def.'s Mot. at 19). In other words, the claims are inside the statute, but the factual basis for those claims is outside it.

"Little need be said" of BMS's argument—it was rejected by the Fifth Circuit long ago in *Smith v. United States*, 287 F.2d 299, 303 (5th Cir. 1961). *Smith* established that conduct outside the limitations period can still trigger a claim inside the limitations period. *Id.* And, BMS's attempts to distinguish *Smith* from the facts of this case (without citation to any authority) are unpersuasive.

In an FCA suit, the limitations period is computed from "the date on which the violation of [the FCA] is committed." § 3731(b)(1); *see Smith*, 287 F.2d at 303. The 'violation' is the filing of a false claim. *Smith*, 287 F.2d at 303. As previously noted, the FCA "attaches liability not to the underlying fraudulent activity or to the government's wrongful payment, but the 'claim for payment.'"*Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 785 (4th Cir. 1999). Even BMS admits that "*Smith* leaves no doubt that in the Fifth Circuit, the trigger for limitations is the submission of the claim." (Def.'s Reply at 5 n6).

Here, Foster has alleged that false claims were submitted from March 31, 1999 through 2002 (within the 6 year statute of limitations). Because the limitations period begins to run from the date on which the false claim for payment was submitted to the government, these claims are not barred. BMS does not dispute that these claims are alleged to have occurred inside the statute; just that Foster has not pled sufficient facts to support the claims inside the statute. (See Def.'s Reply at 5-6). In this Court's view, BMS's argument that Foster's factual deficiency is grounds for dismissing all of his claims is not a statute of limitations argument. Really, it is an argument about the sufficiency of the claims and the particularity with which they have been pled. This argument will be addressed below in the Court's discussion of Foster's pleadings.

(2)     State FCA Claims

In addition to his federal FCA claims, Foster has asserted causes of action under the

analogous FCA statutes of Texas, Illinois, California, Florida, and Massachusetts.  BMS asserts that the applicable statute of limitations under each of these state FCAs (except California's) is as short as, or shorter than the federal statute.[7]  Accordingly, BMS argues that the Texas, Illinois, Florida, and Massachusetts claims are time-barred and must be dismissed.

a)      Illinois, Massachusetts & Florida FCAs

As Foster concedes, the Illinois and Massachusetts FCAs have six-years statutes of limitations that "mimic 31 U.S.C. § 3731(b)."  Therefore, based on the analysis above, any false claims submitted before March 31, 1999 are time-barred under the Illinois and Massachusetts FCA and must be dismissed.

Similarly, Foster admits that the Florida FCA tracks the language of 31 U.S.C. § 3731(b), although its specific time limits are different.  Under the version of the Florida FCA applicable at the time Foster filed his complaint, claims must be filed no more than five years after the date on which the violation was committed, or no more than 2 years after the material facts known by the government official charged with responsibility to act, but in no event more than 7 years after the date on which the violation is committed.  Fla. Stat. § 68.089 (1994).[8]  As such, based on the foregoing analysis of 31 U.S.C. § 3731(b), the Court concludes that the Florida FCA's limitations period bars any false claims submitted before March 31, 2000.

---

[7]The statute of limitations under the California FCA is ten years. *See State ex rel. Hindin v. Hewlett-Packard Co.,*153 Cal.App. 4th 307, 313-314 (Cal.App. 2007) (quoting Cal. Gov't Code § 12654(a)).  Specifically, the statute provides that claims must be brought withing "three years after the date of discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances or, in any event, no more than 10 years after the date on which the violation of Section 12651 is committed." *Id.*  Here, Foster filed suit on March 31, 2005, asserting violations dating back to January 1998.  As such, none of his claims are barred by California's statute of limitations.

[8]The statute of limitations under the Florida FCA was amended, effective July 1, 2007, to be six years like the federal FCA. *See* Fla. Stat. § 68.089 (2007).

b)     Texas FCA

The Texas Medicaid Fraud Prevention Law ("Texas MFPL") has no express limitations period.  Tex. Hum. Res. Code Ann. §§ 36.001 *et seq.*  So, BMS asserts that Foster's claims under that statute are governed the residual limitations period of Texas Civil Practice and Remedies Code § 16.051, which imposes a four-year limitations period from the day the cause of action accrues.  Tex. Civ. Prac. & Rem. Code § 16.051.  In opposition, Foster argues that this *qui tam* lawsuit is a right of action belonging to the government and is therefore exempt from this four-year limitation.  Tex. Civ. Prac & Rem. Code § 16.061 provides that a right of action of the state is not barred by Section 16.051.  And, Foster argues, although the state has not intervened, this *qui tam* is a right of action belonging to the government because "it is the government, not the relator, who is the real plaintiff in the suit."  *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756 n10 (5th Cir. 2001) (quoting *United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208, 1213 (7th Cir. 1995)).  However, Foster takes this quote from *Riley* out of context in an attempt to show that the identities of the relator and the government are directly aligned.  As discussed above, the Fifth Circuit established in *Foulds* that the relator is not in direct identity with the government, noting that the relator has an "independent and controlling role in initiating and prosecuting an FCA suit."  *Foulds*, 171 F.3d at 294.

Therefore, because the state has not intervened, this right of action belongs to Foster–and is subject to the four-year statute of limitations in § 16.051.  Any Texas FCA violations alleged to have occurred before March 31, 2001 are barred.

Furthermore and in the alternative, all of Foster's Texas MFPL claims should be dismissed because the State of Texas did not intervene in the lawsuit within 60 days of receiving the complaint.  According to Texas law in effect when Foster filed suit, "if the state declines to take over the [qui tam] action, the court shall dismiss the action."  Tex. Hum. Res. Code § 36.104(b)  (Vernon 1997).  The Texas MFPL provides that "the state may elect to intervene and proceed with the action not later than the 60th day after the date the attorney general receives the petition and the material evidence and information;" Tex. Hum. Res. Code § 36.102(c) (Vernon 1997).  So, if those 60 days

have passed the state can no longer intervene and the claim should be dismissed.

Curiously, Foster argues that this 60-day period has not commenced because the state has not yet received the requisite "material evidence and information." (Relator's Resp. at 29). Yet Foster simultaneously claims that he has complied with the Texas MFPL's service requirements, which require a *qui tam* relator to serve the state with the petition and "substantially all material evidence and information." Tex. Hum. Res. Code § 36.102(a) (Vernon 1997). Foster cannot have it both ways. If he properly served the state, then the state received the "material evidence and information" at least a year ago.[9] The 60-day period has now run and the State of Texas can no longer proceed with this action. Foster's claims under the Texas MFPL must be dismissed. *See* Tex. Hum. Res. Code § 36.104 (Vernon 1997).[10]

(3)    Conclusion

Having analyzed the applicable statutes of limitations, the Court determines that all federal and state FCA violations based on false claims submitted before March 31, 1999 (other than California claims) are barred by the statute of limitations. However, the Court also concludes Foster's claims based on false submissions to the government on or after March 31, 1999 are timely.

The Court now considers whether these post-March 31, 1999 claims have been pled with sufficient particularity under the Federal Rules of Civil Procedure.

---

[9]The Complaint must be served on the state before it is unsealed. Tex. Hum. Res. § 36.012(a). This Court unsealed Foster's Complaint on June 27, 2007.

[10]Alternatively, if the State of Texas has not yet received the "material evidence and information," then Foster failed to effect proper service (under Section 36.102(a)) before the complaint was unsealed and his claim must be dismissed. *See, e.g., United States ex rel Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir. 1995) (holding that dismissal with prejudice is appropriate where the relator did not file complaint under seal and did not serve complaint and disclosure on the government); *White v. Appollo Group*, 241 F.Supp.2d 710 (W.D. Tex. 2003) (dismissing an FCA claim not filed under seal and not served together with written disclosures on the government).

C.  <u>Rule 9(b) Pleading Requirement</u>

The allegations of fraud in Foster's complaint are pled on "information and belief."  BMS argues that such pleadings are improper, and urges the Court to dismiss Foster's complaint for failing to plead his FCA claims with the particularity required by Federal Rule of Civil Procedure 9(b).

(a)    Legal Standard

Generally, the federal rules require that a plaintiff's complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061 (5th Cir. 1994) (quoting Fed. R. Civ. P. 8(a)).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d).  However, Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Generally, pleadings of fraud cannot be based on information and belief.  *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

Rule 9(b)'s "particularity" requirement serves several purposes: it provides notice of the nature and grounds of the plaintiff's claim, ensuring that a defendant has sufficient information to formulate a defense; it protects defendants from harm to their reputation and goodwill; it reduces the number of frivolous suits; and, it prevents plaintiffs from filing a claim and then attempting to uncover unknown wrongs through discovery.  *Tuchman,* 14 F.3d at 1067; *Harrison v. Westinghouse*, 176 F.3d 776, 784 (4th Cir. 1999); *United States of America ex rel. King v. Alcon Laboratories, Inc.*, 232 F.R.D. 568, 570 n.2 (N.D. Tex. 2005) (citing *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 614 (S.D. Tex. 2001)).

The Fifth Circuit has established that, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States, ex rel Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *Thompson* 125 F.3d at 903 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d175, 179 (5th Cir. 1997)).  These facts must be

laid out "before access to the discovery process is granted." *Williams v. WMX Tech, Inc.*, 112 F.3d at 178. Accordingly, a motion to dismiss for failure to meet the requirements of Rule 9(b) is treated as a motion to dismiss on the pleadings for failure to state a claim. *See United States ex rel. Doe v. Dow Chem. Co.,* 343 F.3d 325, 330 (5th Cir. 2003); *U nited States, ex rel Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999).

Claims brought under the FCA must fulfill the pleading requirements of Rule 9(b). *Doe v. Dow Chemical Company*, 343 F.3d at 328 (citing *Thompson* , 125 F.3d at 903 ). As stated above, in an FCA suit, liability attaches to false statements or claims for payment presented to the government. *Russell v. Epic*, 193 F.3d at 308 (citing *Harrison v. Westinghouse*, 176 F.3d at 785). Therefore, "[b]ecause such statements or claims are among the circumstances constituting fraud in an FCA suit, [they] must be pled with particularity under Rule 9(b)." *Id.* More precisely, the complaint must set forth the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby," in order to satisfy Rule 9(b). *Doe v. Dow*, 343 F.3d at 329 (quoting *Russell v. Epic*, 193 F.3d at 308). At the same time, "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *Tuchman*, 14 F.3d at 1068 (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).

Just as the particularity requirements of Rule 9(b) are dependant on the facts of the case, they are also dependant on Rule 8. *See United States ex rel Johnson v. Shell Oil Company*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) (citing *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("Rule 8...require[s] all pleadings to be construed to do substantial justice and must be read *in para materia* with Rule 9(b).") (Hannah, J.). The Fifth Circuit has described the interaction of Rules 8 and 9 in this way: "Rule 9 must be read in light of the basic pleading philosophy set forth in Rule 8...Thus, although Rule 9(b) calls for fraud to be pleaded with particularity, the allegations still must be as short, plain, simple, direct and concise as is reasonable under the circumstances." *Corwin v. Marney*, 788 F.2d 1063, 1068 n4 (5th Cir. 1986) (quoting Wright & Miller, *Federal Practice and Procedure* § 1291 at 389 (1969)). "Rule 9(b) should not be read so as to obliterate this basic pleading philosophy." *Id.; see also United States of America ex rel. Bledsoe v. Community*

*Health Systems, Inc.,* 501 F.3d 493, 502 (6th Cir. 2007) ("Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with [Rule 8]." (citing *Michael Bldg. Co.  Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988))).

(b)     Exception:  Relaxed Pleading on Information and Belief

    (1)     Information in Defendant's Possession

Additionally, the Fifth Circuit has developed an exception in FCA cases that permits the particularity requirements of Rule 9(b) to be relaxed in certain circumstances. *Doe v. Dow,* 343 F.3d at 329 (citing *Russell v. Epic*, 193 F.3d at 308).  It has held that "when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed, and fraud may be pled on information and belief." *Russell v. Epic*, 193 F.3d at 308 (citing *Thompson*, 125 F.3d at 903).  However, even under this relaxed standard, the plaintiff must still set forth the factual basis for his belief. *Id.*  Further, the Fifth Circuit has warned that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Thompson,* 125 F.3d at 903 (quoting *Tuchman*, 14 F.3d at 1068; *see also Russell*, 193 F.3d at 308 ("A special relaxing of Rule 9(b) is a *qui tam* plaintiff's ticket to the discovery process that the statute itself does not contemplate.").

In this case, Foster argues that he is entitled to this relaxed pleading standard (and may plead his claims on information and belief) because "he does not have access to certain of the precise facts related to the false claims." (Relator's Resp. to Def.'s Mot. to Dismiss at 18).  He asserts that such information is "in the exclusive possession and/or control of Defendant and/or the United States."<sup>11</sup> *Id.*  However, Foster's argument that this information is possessed by a party *other* than BMS is a

---

<sup>11</sup>There is a certain irony in Foster's argument that he is hindered because the United States government is in possession of the requisite information.  A fundamental principle of a *qui tam* suit is that the relator possesses information that the government does *not* have. *See, e.g., Russell v. Epic Healthcare*, 193 F.3d at 308 ("[T]he False Claims act grants a right of action to private citizens only if they have independently obtained knowledge of fraud. With this requirement the government seeks to purchase information it might not otherwise acquire.").

tacit admission that this relaxed exception does not fit. The Fifth Circuit has clearly stated that the exception applies only "when the facts relating to the alleged fraud are peculiarly within *the perpetrator's* knowledge." *Russell v. Epic*, 193 F.3d at 308 (citing *Thompson*, 125 F.3d at 903) (emphasis added).

With respect to the claims based on false Best Price submissions, Foster states that "the detailed false claim data supporting [his] claims is also in the hands of the United States government." (Relator's Resp. To Def.'s Mot. To Dismiss at 19). As explained in Section I *supra*, as part of the Medicaid rebate program, BMS must submit its Best Price and AMP information to the Centers for Medicare and Medicaid Services. Foster argues that because "both [the Centers for Medicare and Medicaid Services] and the state Medicaid programs are statutorily mandated to protect the confidentiality of Defendant's 'best price' and AMP information," he is unable to obtain the information from the government. Unfortunately for Foster, the Fifth Circuit has previously rejected the same argument. In *Russell v. Epic Healthcare*, the Fifth Circuit found that the relaxed standard was not applicable where "documents containing the requisite information were possessed by other entities, such as the [Centers for Medicare and Medicaid Services]."[12]

With respect to the allegations based on kickback violations, Foster faces a similar problem. As BMS points out, "the details necessary to support Relator's allegations that BMS's conduct in paying 'kickbacks' to OHP resulted in the submission of false reimbursement claims by providers" are not in BMS's possession. (Def.'s Reply at 9) Instead, those details are in the possession of the healthcare providers who submitted the claims. So, the information concerning the alleged kickback payments, prescriptions, and resulting reimbursement claims is not in BMS's exclusive possession. The information Foster seeks is also possessed by parties like OHP, pharmacies, and the federal and state agencies responsible for administering Medicaid reimbursements.

As such, because the information related to Foster's claims is not peculiarly in BMS's

---

[12]Although the *Russell* Court referred to the "Healthcare Financing Administration," the reference is to the same agency cited by Foster. On July 21, 2001, the Healthcare Financing Administration was renamed the "Centers for Medicare and Medicaid Services." *See* http://www.cms.hhs.gov.

possession, Foster is not entitled to a relaxed pleading standard on this basis.

### (2) Complex Scheme / Multi-Year Period

However, some district courts in the Fifth Circuit have also relaxed Rule 9(b)'s pleading standard where the alleged fraud occurred over an extended period of time and consists of numerous acts. *See United States ex rel. Lam v. Tenet Healthcare Corp.,* 481 F.Supp.2d 689, 697 (W.D. Tex. 2007) (citing *King v. Alcon*, 232 F.R.D. at 570 (citing *United States ex rel Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001); *see also Johnson v. Shell Oil*, 183 F.R.D. at 206 (citing numerous district court cases for the proposition that "where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied."); *United States ex rel. Thompson v. Columbia/HCA Healthcare*, 20 F.Supp.2d 1017, 1039 (S.D. Tex. 1998); *cf. United States ex rel. Bledsoe v.Community Health Systems, Inc.*, 501 F.3d 493, 509-510 (6th Cir. 2007) ("Where the complaint alleges numerous fraudulent transactions over an extended period of time, it may be impractical to require plaintiff to plead the specifics of each and every transaction. In such cases, therefore, plaintiff may plead the fraudulent scheme with particularity and provide representative examples of specific fraudulent acts conducted pursuant to that scheme."); and *Lee,* 245 F.3d at 1051 ("While a complaint that covers a multi-year period may not be required by Rule 9(b) to contain a detailed allegation of all facts supporting each and every instance of submission of a false claim, some information on the false claims must be included."). Where these circumstances existed in *Lam* and *King*, the courts permitted the plaintiffs to plead fraud based on information and belief. *See Lam*, 481 F.Supp.2d at 697; *See King* 232 F.R.D. at 570. Nevertheless, the Fifth Circuit has warned that a relaxed pleading standard "must not be mistaken for license to base claim of fraud on speculation and conclusory allegations." *Willard*, 336 F.3d at 385 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 n.67 (5th Cir. 2002)). Even under this relaxed exception, the plaintiff is required to set forth a sufficient factual basis for his belief. *See Lam*, 481 F.Supp.2d at 697 ("Even where Rule 9 (b)'s requirements are relaxed and the allegations are based on information and belief; the complaint must still set forth a factual basis for the belief.") (citing *Thompson*, 125 F.3d at 903); *See King*, 232 F.R.D. at 570-81 ("[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief.")

(quoting *Willard*, 336 F.3d at 385); *see also Karvelas*, 360 F.3d at 226 ("[A]llegations of fraud made on information and belief are also subject to the additional requirement that the complaint set forth the facts on which the belief is founded.")

The fraud alleged by Foster consists of a scheme that occurred over the course of several years and involved numerous acts. Given these circumstances, and the cases cited in the preceding paragraph, the Court will relax the Rule 9(b) pleading requirement.

However, in spite of this leniency, Foster's complaint is still deficient because he fails to plead sufficient facts to support his allegations made on information and belief. This deficiency is described below.

(c)     Foster's Complaint

The Court now turns to the substance of Foster's complaint, mindful that he must plead specific facts and not mere conclusory allegations, but accepting as true the well-pleaded factual allegations of his complaint and reasonable inferences that may be drawn from them. *Johnson v. Shell*, 183 F.R.D. at 207 (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5ᵗʰ Cir. 1993)).

(1)     Foster's Federal FCA Claims Fail to Satisfy Rule 9(b)

Because any false claims made prior to March 31, 1999 are barred by the FCA's six-year statute of limitations, the Court will only evaluate the sufficiency of the false claims alleged to have occurred on or after March 31, 1999.

As stated above, Foster's complaint is based on incidents alleged to have occurred while he was an account manager for Parke-Davis. First, Foster claims that on multiple occasions between February 1998 and January 1999, OHP representatives told him that BMS was giving rebates and other financial incentives to OHP and its officials. Secondly, Foster claims that in December 1998, BMS regional account representative Vanessa Pappion told him that BMS did not include the

incentives in the Best Price amount it reported for purposes of calculating Medicaid rebates. Foster asserts that OHP Pharmacy Director Tim Hambacher repeated this claim in March 1999. The Court must accept these factual allegations as true. Even so, Foster fails to satisfy the pleading requirements set forth in Rule 9(b) because these facts are insufficient to support the allegations set forth in his complaint.

(i)    <u>Federal FCA Claims based on Kickback Violations</u>

Foster's first false claim allegation states that BMS gave illegal kickbacks, thereby causing false claims for payment to be submitted to the government. This allegation is based on the following line of reasoning.

Foster claims that BMS paid unlawful rebates, discounts and other financial incentives to OHP in order to gain placement on the OHP formulary. As a result (Foster argues) OHP physicians prescribed BMS's drugs to *all* of their patients. Such health care providers would then submit claims for payment to Medicaid. On this basis, Foster asserts that "[a]ll claims for payment resulting from these illegally-induced recommendations were false claims. By paying such illegal incentives, Defendant BMS caused the submission of false claims for payment in violation of federal and state False Claims Acts." (Relator's Compl. At 16).

This cryptic allegation appears to be an attempt to plead false claims based on the "implied certification" theory of liability. *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, 491 F.Supp.2d 12, 17-18 (D. Mass. 2007) (finding that "the FCA is violated when a Medicaid claim is presented to the state government in violation of the Anti-Kickback statute, even if there is no express certification of compliance with the statute.") (citing *United States v. Neifert-White*, 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968). This Court can conceive of no other way that such allegations could possibly result in FCA liability.[13]

---

[13]Foster describes the influence of the kickbacks on prescription patterns as a "spillover effect," which impacted federal programs and federal dollars. Foster points out that such spillover "has long been recognized by federal courts and legal scholars as having a significant effect on domestic commerce and federal product pricing indices, particularly in antitrust

The theory of implied certification rests on the notion that "where the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent." *United States ex rel Barrett v. Coumbia/HCA Healthcare Corp.*, 251 F.Supp.2d 28, 33 (D.D.C. 2003) (citing *Ab-Tech Construction, Inc. v. United States*, 31 Fed.Cl. 429 (Fed.Cl. 1994)); *see United States ex rel Thompson v. Columbia/HCA Healthcare Corporation,* 20 F.Supp.2d 1017, 1034-38 (S.D. Tex. 1998). In other words, implied certification does not assert that the claims for payment submitted to the government were actually false. Rather, the idea is that the claims for payment were impliedly false because they suggested that the provider complied with applicable statutes and regulations (such as the AKS) before submitting the claim. *Id.*

The Fifth Circuit has never formally recognized the "implied certification" theory. *See United States ex rel Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 382 ("This court need not determine here whether it will recognize the "implied certification" theory.). However, it was recognized by a district court in *United States ex rel Thompson v. Columbia/HCA Healthcare Corporation,* 20 F.Supp.2d 1017 (S.D. Tex. 1998). Regardless, this Court need not decide whether implied certification applies, because even assuming *arguendo* that it does, Foster has failed to plead his AKS claim with the particularity required by Rule 9(b). The Court has described the implied certification theory here only to clarify the nature of Foster's kickback allegations–and to highlight their deficiencies.

With some degree of particularity, Foster describes various financial incentives paid by BMS to OHP and its representatives, including: retroactive rebates and cash grants to OHP's pharmacy department; research grants, consulting and speaking fees, and the use of a private jet to Dr. Milani

litigation." (Relator's Resp. to Def.'s Mot. to Dismiss at 25). Accepting that statement at face value, it is still unclear how such a "spillover effect" is relevant in false claims litigation. Plaintiff has failed to explain–and this Court can find no case that explains–how spillover amounts to a false claim that would be actionable in this FCA suit. As previously stated, "[e]vidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *Karvelas*, 360 F.3d at 225 (internal quotations and citation omitted). "[V]iolation of law, rules or regulations alone do not create a cause of action under the FCA." *Thompson v. Columbia/HCA,* 125 F.3d at 902 (quoting *Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

(the head of OHP's Pharmaceuticals committee). Foster alleges that these kickbacks resulted in BMS's drugs being included in the OHP formulary. From these facts, Foster then jumps to a number of unsubstantiated conclusions.

First, Foster claims that a placement on the OHP formulary caused "OHP physicians to prescribe Defendant's drugs over its competitors' not only to OHP patients but also to physicians' entire patient population comprised of, among others, Medicaid subscribers." (Relator's Resp. to Def.'s Mot. to Dismiss at 25). However, Foster provides not one factual detail or example to support this allegation. He does not name any OHP physician who issued such prescriptions, nor any patient who received them–much less show that the patient was connected to Medicaid. *See, e.g., Barrett*, 251 F.Supp.2d at 35 (finding that because plaintiff's kickback allegations were "not specifically connected to Medicare patients," they were "too vague to give defendants notice of the relationship between the alleged kickbacks and the submission of claims to Medicare.") Foster does not list one instance in which an OHP doctor selected a BMS drug over that of a competitor. He does not even provide general statistical information to indicate the frequency with which OHP doctors prescribed BMS drugs. *Cf. Thompson*, 125 F.3d 903 (finding that statistical studies did not provide a factual basis for relator's belief that false claims were submitted). To put it plainly, Foster provides no factual support or explanation for his belief that kickbacks induced doctors to prescribe BMS drugs. This Court must make reasonable inferences from the facts alleged by Foster. *Johnson v. Shell*, 183 F.R.D. at 207. But, the Court is without information to suggest that kickbacks induced any recommendations connected to a federal healthcare patients. The claim is simply an unsubstantiated allegation, which the Court is not required to accept. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

Nevertheless, from his unsupported claim about doctor's recommendations, Foster then leaps to the conclusion that false claims resulted. He states that "[a]ll claims for payment resulting from these illegally-induced recommendations were false claims. By paying such illegal incentives, Defendant BMS caused the submission of false claims for payment in violation of federal and state False Claims Acts." (Relator's Resp. to Def.'s Mot. to Dismiss at 16) Despite the boldness of this assertion, Foster does not provide a single factual detail from which the Court could infer that a

claim for payment was actually submitted to the government. Frankly, it is not completely clear from the face of the complaint what Foster means by a "claim for payment." Presumably, he is referring to claims for reimbursement submitted by doctors to Medicare and/or Medicaid after prescribing BMS drugs. The only factual details Foster supplies in support of his AKS-based claims are his allegations that BMS provided kickbacks to OHP. Faced with similar facts in *Rost*, the First Circuit stated that the pleadings may "suggest fraud was possible; but the complaint contain[s] no factual or statistical evidence to strengthen the inference of fraud beyond possibility." *Rost*, 507 F.3d at 733. Likewise, Foster does not provide any factual details from which this Court can reasonably infer a link between the kickback scheme he describes and the submission of a claim for payment to the United States.

The Court concludes that even under a relaxed pleading standard, Foster has failed to set forth the factual basis for his "information and belief" that the kickback scheme resulted in the submission of false claims. *Accord Sanderson v. HCA - the Healthcare Company*, 447 F.3d 873, 877-78 (6th Cir. 2006) (citing *Thompson*, 125 F.3d at 903); *accord United States ex. Rel Joshi v. St. Lukes Hospital, Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (disallowing a complaint that alleged a fraudulent scheme but "failed to provide a factual basis to conclude fraudulent claims were ever actually submitted to the government in violation of the False Claims Act"). Foster provides no facts to support his belief that OHP doctors prescribed BMS drugs instead of its competitor's drugs. Additionally, he gives no factual basis whatsoever for his claim that the doctor's recommendations resulted in false claims for payment. Therefore, Foster's allegations amount to nothing more than speculation, which fails to satisfy a relaxed Rule 9(b) pleading standard. *See Thompson*, 125 F.3d at 903.

(ii) <u>Federal FCA Claims Based on False Best Price Submissions</u>

Foster's Best Price claims are similarly speculative. To briefly recap these claims: Foster alleges that from 1998 through 2002, BMS did not factor the financial incentives given to OHP into its Best Price reports. By omitting this information BMS would have effectively reduced the reimbursement amounts due to state Medicaid programs, and paid less in rebates than what it

actually owed.

Foster's Best Price claims are characterized as 'reverse claims' under the FCA, since they are based on the idea that BMS misrepresented its Best Price to the government in order to reduce its obligation to pay Medicaid rebates to the states. *See* 31 U.S.C. § 3729(a)(7). Under this reverse claim theory, the 'claim for payment' to which liability attaches is the Best Price report. This report is submitted to the government on a quarterly basis. Here, Foster alleges that BMS reported false Best Prices after the end of each quarter, from January 1998 through January 2002. The Court has already concluded that any false claims submitted prior to March 31, 1999 are barred by the FCA's six-year statute of limitations. Therefore, the Court's consideration is limited to the Best Price reports submitted from April 1999 through January 2002.

Here again, Foster pleads his Best Price claims on information and belief. But, even under a relaxed Rule 9(b) pleading standard, he must provide sufficient facts to support the allegations he makes on information and belief. *See Lam*, 481 F.Supp.2d at 697 (citing *Thompson*, 125 F.3d at 903); *see also King v. Alcon*, 232 F.R.D. at 570; *See Thompson*, 20 F.Supp.2d at 1039. As such, the question now before the Court is whether the facts alleged by Foster form a sufficient basis to support his allegations that false Best Price reports were submitted from April 1999 through 2002. The Court finds that they do not.

The specific factual basis given by Foster for the Best Price claims includes his knowledge of kickbacks given to OHP, but centers on two specific conversations: his December 1998 communication with Vanessa Pappion; (Relator's Compl. at 14); and his March 1999 exchange with Dr. Tim Hambacher; (Relator's Compl. at 15). In each of these instances, Foster claims he was told that while BMS provided grants and kickbacks to OHP, it did not report the information as part its Best Price.

To begin with, the Pappion and Hambacher statements were not forward-looking assertions that expressed an intent to submit false Best Price reports in the future. They were statements about what had occurred up to that time. As such, they necessarily require an inference that because BMS

omitted the financial incentives from its Best Price reports in the past, they continued to do so in the future–from April 1999 through 2002. Foster "is entitled to all inferences that surface from a fair and reasonable reading of the pleadings." *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996) However, the Court "need not strain to find inferences favorable to [him]." *Id.* The facts Foster alleges require such a strain.

Foster's complaint includes no factual allegations of fraud beyond the first quarter of 1999. (Relator's Compl. at 15-16).[14] The complaint does not describe any grants, rebates, kickbacks or other financial incentives given to OHP after March 1999. Further, Hambacher's statement in March 1999 is the last fact given to suggest that BMS may have ever inflated its Best Price. Foster provides no other facts to support his claim that BMS inflated its Best Price from that time until 2002.

Actually, other facts presented in the complaint undercut Foster's assertions by making his allegations appear more speculative, and the inferences they require less reasonable. For example, Foster claims that he learned about BMS's fraudulent practices by virtue of his work as an account manager for Parke-Davis. (Relator's Resp. to Def.'s Mot. to Dismiss at 5) However, Foster left that position in September 2000; presumably cutting-off his source of information. Yet without any explanation, he alleges that BMS continued to submit false Best Price Reports for the next sixteen months. Foster offers no factual support for this allegation. The basis for his belief is completely absent from the complaint.

While Foster has identified the approximate dates upon which BMS submitted Best Price reports, his ability to do so is not based on any firsthand knowledge of the reports. The dates for submitting Best Price reports are established by statute. This fact does not undermine his position; but it does not provide any factual support for his allegations either. Knowing the approximate

---

[14]Foster does allege that he met with OHP's Dr. Richard Milani in April 1999. However, he claims that during that meeting they only discussed financial grants that BMS had "already provided." (Relator's Compl. at 15-16).

statutory dates, Foster alleges on information and belief that the Best Prices reported were false. However, he does not support his belief that such reports were false with any factual details. Without such details, his allegations are deficient.

Although this Court has chosen to relax the pleading requirements of Rule 9(b), the Fifth Circuit has cautioned that such a relaxed standard "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Thompson*, 125 F.3d at 903 (citing *Tuchman*, 14 F.3d at 1068). Unfortunately, it appears that Foster has made this mistake. As described above, Foster has pled no facts that occurred beyond April 1999. So, his factual allegations require an inference that BMS submitted false Best Price reports from April 1999 through January 2002. But, the factual basis he has provided is insufficient to make that inference reasonable. His assertion that BMS submitted inflated Best Price reports through 2002 is a conclusory allegation that calls for impermissible deductions of fact. *See Willard*, 336 F.3d at 379 ("[C]onclusory allegations...will not suffice to prevent a motion to dismiss, and neither will unwarranted deductions of fact." (citing *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992))) (internal quotations and citations omitted). As such, Foster fails even a relaxed pleading standard, because he fails to set forth a sufficient factual basis for his belief that false Best Prices were submitted within the statute of limitations. *See Lam*, 481 F.Supp.2d at 697 (citing *Thompson*, 125 F.3d at 903); *see King*, 232 F.R.D. at 570-81 (quoting *Willard*, 336 F.3d at 385).

(iii)     Federal FCA Claims Based on Inflated Drug Prices for Section 340B Entities

Finally, Foster's FCA claim that BMS overcharged federally-qualified entities under the Section 340B drug discount program fails to satisfy Rule 9(b) for the same reason: he provides no factual basis for his allegations. As explained in Sections I(B) and I(C) *supra,* the Best Price is used to calculate the Medicaid rebate percentage; while the Medicaid rebate percentage is used to calculate Section 340B drug prices. Foster's Section 340B claim is based solely on the theory that because BMS reported false Best Prices, it reduced its Medicaid rebate percentage, and thereby inflated the drug prices it charged to Section 340B entities. He provides no additional facts

whatsoever to support his Section 340B claim. The claim depends completely on the charge that BMS reported false Best Prices. This Court has already concluded that Foster's complaint does not provide a sufficient factual basis to support his Best Price claims. Therefore, his Section 340B claims likewise fail to satisfy the requirements of Rule 9(b).

(2)    Foster's State FCA Claims Fail to Satisfy Rule 9(b)

In addition to his federal FCA claims, Foster alleges that BMS violated the state FCAs of Texas, Illinois, California, Florida, and Massachusetts. These state claims are likewise subject to the pleading requirements of Rule 9(b). *See, e.g., Williams v. WMX Tech, Inc.*, 112 F3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules."); *See Rost*, 507 F.3d at 731 n8 ("The heightened pleading standard of Rule 9(b) generally applies to state law fraud claims brought in federal court.") (citing *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 427 (1st Cir. 2007); 5A Wright & Miller, *Federal Practice and Procedure* § 1297 (3d ed. 2004)). Above, the Court decided that all federal and state FCA violations based on false claims submitted before March 31, 1999 (other than California claims) were barred by the statute of limitations. *See* Section III(B) *supra.* Then, the Court determined that Foster's federal FCA claims submitted within the statute of limitations failed to satisfy Rule 9(b) because he failed plead sufficient facts to support those claims. *See* Section III(C)(c)(1) *supra.*

Because the statutes of limitations under the Texas, Illinois, Florida and Massachusetts FCAs are as short as (or shorter than) the federal FCA, Foster's claims under those state FCAs are exactly the same as those considered by the Court in addressing Foster's federal FCA claims. The analysis that applied to the federal claims applies equally to the Texas, Illinois, Florida and Massachusetts claims. So, for the same reasons given above, the Court finds that Foster has failed to provide a factual basis for the Texas, Illinois, Florida and Massachusetts FCA claims submitted on or after March 31, 1999. As such, those state FCA claims fail to satisfy Rule 9(b) and must be dismissed.

(d)     Conclusion

For the foregoing reasons, the Court finds that Foster's complaint fails to provide a sufficient factual basis for any false claims submitted on or after March 31, 1999.  As such, Foster's claims under the federal FCA (Count I), the Texas MFPL (Count II), the Illinois FCA (Count III), the Florida FCA (Count V), and the Massachusetts FCA (Count VI) will be dismissed.

Having determined that all such claims fail, the only remaining claims are those brought under the California FCA.

D.  California FCA Claims

Foster's claims under the California FCA are not identical to the federal FCA claims already analyzed by the Court.  Because the statute of limitations under the California FCA is ten years, the California claims date back to January 1998, while the timely federal FCA claims analyzed above began on March 31, 1999.  So, an all-inclusive analysis of Foster's California FCA claims would require the Court to consider a set of claims different from (and in addition to) those considered above.  The Court would have to analyze whether Foster has provided a sufficient factual basis for all of the false claims which he alleges BMS submitted from January 1998 through 2002, rather than just those submitted from March 31, 1999 through 2002.  That analysis might well reach conclusions different from those stated above.  However, the Court will not delve into such considerations. Having dismissed Foster's federal claims, the Court declines to exercise supplemental jurisdiction over his remaining claims brought under the California FCA.

When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only  state law claims remain, a district court has broad discretion to decline to exercise supplemental jurisdiction over the remaining claims.  *See City of Chicago v. International Coll. of Surgeons*, 552 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Differential Development - 1994, Ltd. v. Harkrider Distrib. Co.,* 470 F.Supp.2d 727, 756 (S.D. Tex. 2007) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).  In fact, the "general

rule" in the Fifth Circuit is to decline to exercise jurisdiction over pendent state law claims when all federal claims are eliminated from a case before trial. *Differential Development - 1994, Ltd.*, 470 F.Supp.2d at 756 (citing *Certain Underwriters at Lloyd's, London v. Warrantech Corp.*, 461 F.3d 568, 577-78 (5th Cir. 2006) (citing *Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir. 1992))). Dismissing a plaintiff's federal claims, particularly at an early stage of litigation is "a powerful reason to choose not to continue to exercise jurisdiction." *Certain Underwriters,* 461 F.3d at 579 n62 (citing *Cohill*, 484 U.S. at 351); *Smith v. Amedisys,* 298 F.3d 434, 447 (5th Cir. 2002) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)). If the district court declines to exercise jurisdiction, it may dismiss a plaintiff's state law claims without prejudice to refiling. *See Bass v. Parkwood Hosp*. 180 F.3d 234, 246 (5th Cir. 1999).

A court considering whether to exercise supplemental jurisdiction over state law claims must consider the provisions of 28 U.S.C. § 1367(c) and the factors outlined by the Supreme Court in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 350-51.[15] *See Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008); *Hanak v. Talon Ins. Agency, Ltd.*, 470 F.Supp.2d 695, 707 (E.D. Tex. 2006) (Crone, J.). These factors are (1) judicial economy, (2) convenience, (3) fairness, and (4) comity in having state courts decide state issues. *Id.* These factors should be considered on a case-by-case basis; and no single factor is dispositive. *Mendoza*, 532 F.3d at 346 (citing *Parker & Parsley*, 972 F.2d at 587).

Having considered these factors and the totality of the circumstances, the Court finds that,

---

[15]Under Section 1367(c) a district court may decline to exercise supplemental jurisdiction if:

(1)     the claim raises a novel or complex issue of state law,
(2)     the claim substantially predominates over the claim or claims over which the court has original jurisdiction,
(3)     the district court has dismissed all claims over which it has original jurisdiction, or
(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

on the balance, the factors weigh in favor of dismissal of Foster's claims under the California FCA. The Court declines to exercise supplemental jurisdiction over such claims.

D. Leave to Amend the Complaint

As a final matter, Foster asserts that if the Court determines that his complaint is deficient under Rule 9(b), the Court should grant him leave to amend rather than dismissing his claims. In support of this position, Foster reminds the Court of the Fifth Circuit's view that "a plaintiff's failure to meet the specific pleading requirements [of Rule 9(b)] should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n6 (5th Cir. 2000) (citing *Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstance.").

While Foster has not filed a separate motion to amend, supported by affidavits, a brief, or a proposed amended complaint, he has expressly requested leave to amend. And, the Fifth Circuit has determined that Rule 15(a) applies where a plaintiff expressly requests leave to amend, even though his request is "not contained in a properly captioned motion paper." *Willard*, 336 F.3d at 387 (quoting *Ballisteri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (5th Cir. 1998). At the same time, while a formal motion is not required, the Fifth Circuit has established that in order to take advantage of the federal rules' liberal amendment policy, the party requesting amendment must still "set forth with particularity the grounds for the amendment and the relief sought." *Doe v. Dow*, 343 F.3d 330-31 (5th Cir. 2003) (quoting *Willard*, 336 F.3d at (citing *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445-46 (9th Cir. 1990)). The reasoning behind this approach is that a "bare request in an opposition to a motion to dismiss–without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)–does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).

Foster fails to set forth with particularity the grounds for the amendment and the relief

sought.  Instead, he makes the type of "bare request" disapproved of by the Fifth Circuit.  Foster states simply that "if the Court determines that the Complaint fails to meet the pleading standard of Rule 9(b)–which it should not–Relator hereby respectfully moves the Court for leave to cure any such deficiencies in their [*sic*] Complaint." (Relator's Resp. to Def.'s Mot. to Dismiss at 23).  This request provides no grounds on which an amendment of his complaint should be permitted.  For that reason, it is deficient and Foster will not be granted leave to amend.

Furthermore, the record suggests that the defects in Fosters complaint cannot be cured by granting him leave to amend.  Foster has stated that he does not have access to the precise facts related to false claims allegedly submitted by BMS.  (Relator's Resp. to Def.'s Mot. to Dismiss at 18-19).  When a defect in the complaint is incurable, a court may dismiss the claim without granting leave to amend.  *See Hart*, 199 F.3d at 248 n6.  For this additional reason, the Foster will not be given leave to amend his complaint.

In summary, Foster's failure to provide particular grounds for an amendment, combined with the apparent futility of any such amendment, justify denying his request to amend the complaint.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Dismiss Relator's Complaint and Memorandum of Points and Authorities in Support* [Clerk's Docket No. 22] is **GRANTED IN PART** consistent with the foregoing discussion.

**IT IS FURTHER ORDERED** that Relator John David Foster's federal FCA claims (Count I) are **DISMISSED WITH PREJUDICE.**[16]

---

[16]Because the government has not intervened, the Court does not dismiss this action with prejudice as to the United States.  *See Williams v. Bell Helicopter*, 417 F.3d at 455 (holding that it is improper to dismiss FCA claims with prejudice as to the United States when the government does not intervene in a *qui tam* action that is deficient under Rule 9(b)).

**IT IS FURTHER ORDERED** that Relator John David Foster's claims under the Texas MFPL (Count II), the Illinois FCA (Count III), the Florida FCA (Count V), and the Massachusetts FCA (Count VI) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Relator John David Foster's claims under the California FCA (Count IV) are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

**SIGNED** this the 24 day of **September, 2008.**

Thad Heartfield
United States District Judge